# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

KELLY S. TUNNELL,

    Plaintiff,

v.

JASON B. GILL, et al.,

    Defendants.

Case No. 14-3206-DDC-KGS

## MEMORANDUM AND ORDER

On April 8, 2014, defendant Jason B. Gill and other Sedgwick County Sheriff's Officers arrested plaintiff Kelly S. Tunnell outside the back door of his home. Soon after this arrest, seven officers searched plaintiff's home. Plaintiff claims under 42 U.S.C. § 1983 that defendants Jason B. Gill, Jon Gill, Robert L. Hephner, Justin R. Manning, and Daniel R. Mlagan violated the Fourth Amendment when they conducted this search. *See* Doc. 1. Defendants now move for summary judgment against plaintiff's claim. *See* Doc. 39.

Since defendants filed their Motion for Summary Judgment, plaintiff has filed a pro se[1] Objection to Order of Magistrate Judge (Doc. 60) and a pro se Motion to Stay Decision on Summary Judgment (Doc. 59). Because the court's rulings on these two filings could affect defendants' motion, the court addresses them first. While no defendant responded to either of plaintiff's filings, the court overrules plaintiff's Objection and denies his Motion to Stay Decision. And the court grants defendants' Motion for Summary Judgment in part because

---

[1] Because plaintiff proceeds pro se, the court construes his pleadings liberally and holds them to a less stringent standard than those drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for plaintiff. *Id.* Nor does plaintiff's pro se status excuse him from complying with the court's rules or facing the consequences of noncompliance. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

defendants Robert L. Hephner and Daniel R. Mlagan did not search plaintiff's house on April 8, 2014.

## I. Objection to Order of Magistrate Judge (Doc. 60)

First, the court addresses plaintiff's objection to Judge Sebelius's Order. On March 16, 2018, Magistrate Judge K. Gary Sebelius issued an Order denying plaintiff's Motion to Appoint Counsel and Motion to Amend Complaint. *See* Doc. 55. When denying the Motion to Appoint Counsel, Judge Sebelius pointed out that there is no right to appointed counsel in a civil case. *Id.* at 3 (citing *Sandle v. Principi*, 201 F. App'x 579, 582 (10th Cir. 2006)). But 28 U.S.C. § 1915(e)(1) permits the court to "request an attorney to represent" a party proceeding *in forma pauperis*. Judge Sebelius considered the factors specified by the Tenth Circuit in *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004), and then exercised his discretion not to request counsel for plaintiff under § 1915(e)(1).

When he denied the Motion to Amend Complaint, Judge Sebelius noted that the deadline to add additional parties had passed. He found that plaintiff knew about the deadline yet he had made no effort to extend it. So Judge Sebelius denied the motion.

### A. Legal Standard

If an aggrieved party objects to the magistrate judge's order, the district judge assigned to the case must "set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). For the Order to be "properly objected to," a party's objection must "be both timely and specific." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). An objection is sufficiently specific if it "focus[es] the

district court's attention on the factual and legal issues that are truly in dispute." *Id.* If the aggrieved party fails to make such a proper objection, then he fails to preserve the objection for appellate review. *Id.*

**B.     Analysis**

Here, plaintiff's objection to Judge Sebelius's Order was not timely. Plaintiff filed his objection on April 13, 2018. "A party may serve and file objections to [a magistrate judge's] order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1). The same day as Judge Sebelius's Order—March 16—the Clerk sent a copy of the Order to plaintiff by regular mail, thus completing service of the Order. *See* Fed. R. Civ. P. 5(b)(2)(C) (providing that the court may accomplish service by mailing the Order "to [plaintiff's] last known address—in which event service [was] complete upon mailing"); *accord ReVoal v. Brownback*, No. 14-4076, 2014 WL 5321093, at *1 (D. Kan. Oct. 16, 2014). Rule 6(d) provides a party three additional days when service is made under Rule 5(b)(2)(C). Functionally, the application of these rules provided plaintiff 17 days to object to Judge Sebelius's Order. But plaintiff submitted his objection 28 days after he was served with Judge Sebelius's Order. So plaintiff's objection was untimely.

But the timing concerns don't matter here for a more important reason: Judge Sebelius's Order is not clearly erroneous or contrary to law. Under the clearly erroneous standard, the district court does not conduct a de novo review of the factual findings; instead, it must affirm a magistrate judge's order unless a review of the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). In contrast, the contrary-to-law standard permits the district court to conduct an

independent review of the magistrate judge's purely legal determinations. *Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007). A magistrate judge's order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Walker v. Bd. of Cty. Comm'rs of Sedgwick Cty.*, No. 09-1316-MLB, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011) (citing *Botta v. Barnhart*, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007)).

After reviewing the evidence, the court does not hold a definite and firm conviction that a mistake was made. Likewise, after reviewing Judge Sebelius's legal determinations, the court concludes that he did not misapply or fail to apply relevant law. For these reasons, the court overrules plaintiff's objection and affirms Judge Sebelius's Order.

**II.     Motion to Stay Decision on Summary Judgment (Doc. 59)**

Next, plaintiff asks the court to stay its decision on summary judgment "until Plaintiff has had time to conduct some discovery in this case." Doc. 59 at 1. Plaintiff makes this request under Fed. R. Civ. P. 56(f)—the predecessor to 56(d). Indeed, Rule 56(d) allows a court to "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order" when a party shows by affidavit that it cannot present facts essential to justify its opposition. Fed. R. Civ. P. 56(d). But here, discovery has come and gone and nothing in the record suggests that plaintiff tried to discover the items he now says he needs.

On May 31, 2017, Magistrate Judge David J. Waxse held a Rule 16 scheduling conference with the parties in this case. Plaintiff appeared pro se. After consulting with the parties at this conference, Judge Waxse entered a Scheduling Order on June 7, 2017. *See* Doc. 23. The Scheduling Order set the initial disclosure deadline as June 7, 2017, the supplemental

4

disclosure deadline as 40 days before the discovery deadline, and the discovery deadline as August 24, 2017. *Id.* at 2. In compliance with these deadlines, defendants served their initial Rule 26 disclosures on plaintiff on May 2, 2017. *See* Doc. 27. And defendants served their supplemental disclosures on August 21, 2017—just three days before the discovery deadline. *See* Doc. 31.

What plaintiff doesn't explain is why he filed this motion to stay the court's decision more than seven months after discovery had closed. And nothing in the record suggests that plaintiff tried to request any discovery—much less that he asked the court to compel defendants to produce any of the requested items.

It also appears that plaintiff believes Rule 26 required defendants to provide the items plaintiff seeks. *See* Doc. 59 at 4–5 ¶¶ 12 & 19. Plaintiff misapprehends the rule. Rule 26 requires a party to provide to the other parties:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (iii) a computation of each category of damages claimed by the disclosing party— who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and
>
> (iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1)(A).

Here, plaintiff seeks items like "the time logs/records of when Defendant Gill left the state for Plaintiff[']s residence on April 8, 2014" and "Verbatim hard copies of the police communications, to include copies of the audio tapes, between all defendants and police dispatch on April 8, 2014." Doc. 59 at 2. These items do not necessarily fall within the scope of Rule 26. And even if plaintiff believed that defendants had not complied with Rule 26, his remedy was filing a motion to compel under Rule 37 (which he never did). Nothing in our rules suggests that plaintiff should have waited for seven months after discovery had closed to bring a Rule 56(d) motion.

Also, plaintiff's motion places the burden on defendants' counsel to meet and confer about discovery disputes under Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2. This view misapprehends the responsibilities aligned by these two rules. When they reference "moving party" or "movant," they are referring to the party moving for an order compelling discovery. No party moved to compel discovery of the items plaintiff now requests, so no party had a duty to meet and confer. But had plaintiff wished to compel discovery of these items, it would have been his duty to initiate a meeting to confer with defendants' counsel.

Finally, plaintiff's motion suggests that "this district[']s Civil Practice Standard" requires an "informal discovery conference" before filing a discovery motion. Doc. 59 at 4. The court is unable to discern what rule plaintiff is attempting to invoke. As it must, the court construes plaintiff's argument liberally and interprets plaintiff's reference to an "informal discovery conference" as a meeting to confer about discovery disputes under federal Rule 37 and local Rule 37.2, or the parties' duty to confer at least 21 days before the scheduling conference under federal Rule 26(f). In either event, plaintiff asserts that he attempted to participate in, what he calls, an informal discovery conference by sending defendants' counsel a letter on January 16,

6

2018. Again, plaintiff acted well after the discovery deadline and he provides no reason excusing his late actions.

In sum, plaintiff had the entire two months allowed for discovery to request the items he now says he needs, meet and confer with defendants, and move to compel the production of those items. Plaintiff provides no evidence suggesting that he took any of these actions before August 24, 2017—the discovery deadline—and the court can find nothing in the record supporting plaintiff's position. For these reasons, the court denies plaintiff's Motion to Stay Decision on Summary Judgement (Doc. 59).

## III.     Motion for Summary Judgment (Doc. 39)

With plaintiff's motions resolved, the court now turns to defendants' Motion for Summary Judgment (Doc. 39). Defendants contend they are entitled to summary judgment against plaintiff's claim because the search immediately following plaintiff's arrest was a constitutionally permissible "protective sweep." Alternatively, they argue that their later search—authorized by a search warrant—cured any constitutional violation. Neither of these arguments convince the court that defendants are entitled to summary judgment, so it denies the Motion for Summary Judgment. But the court concludes that the summary judgment record establishes as uncontroverted facts that defendants Robert L. Hephner and Daniel R. Mlagan did not search plaintiff's house on April 8, 2014. So, the court grants those two defendants summary judgment against plaintiff's claim.

A.    Background[2]

The following facts govern this motion. These facts are uncontroverted, or where controverted, are recited in the light most favorable to the plaintiff, the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

1.    **Plaintiff's Prior Arrest**

On April 2, 2014, almost a week before the search at issue here, Sedgwick County Sheriff's Officers arrested plaintiff for possession of a firearm, possession of methamphetamine with intent to sell, possession of marijuana, possession of stolen property, and identity theft.

---

[2] Plaintiff's "Combined Motion and Memorandum Opposing Defendants Request for Summary Judgment" (Doc. 56), "Second Statement of Disputed Facts" (Doc. 57), and "First Affidavit" (Doc. 58) do not comply with D. Kan. Rule. 56.1(b). This rule provides:

> (1) A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.
>
> (2) If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party will be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.

D. Kan. Rule 56.1(b).

Nowhere within the three filings that make up plaintiff's Response does he purport to dispute Defendants' Statement of Uncontroverted Facts. Instead, plaintiff alleges facts throughout the three documents without providing even one citation to the record. Because plaintiff signs them under penalty of perjury, one might consider plaintiff's "Second Statement of Disputed Facts" (Doc. 57) and "First Affidavit" (Doc. 58) as affidavits or declarations designed to support his factual positions under Fed. R. Civ. P. 56(c)(1)(A). Regardless, because plaintiff proceeds pro se, the court has examined plaintiff's filings thoroughly to determine whether they present any genuine issues of material fact. *See Jackson v. Yellow Logistics, Inc.*, 24 F. Supp. 2d 1206, 1209 (D. Kan. 1998). To the extent plaintiff has supported his factual contentions with admissible evidence, the court has adopted plaintiff's facts in its statement of uncontroverted facts.

Plaintiff had two other arrests by the Wichita Police, both for possession of methamphetamine. One occurred on February 20 and the other came on March 14, 2014.

Plaintiff's April 2, 2014 arrest began with a traffic stop by Lt. Gill, a defendant in this case. When Lt. Gill initiated the stop at 1:25 a.m. in Wichita, Kansas, the driver—who law enforcement later learned was plaintiff—left his vehicle and fled into the surrounding neighborhood. Lt. Gill determined that the license plate on the vehicle showed that the vehicle was one that had been taken in a "carjacking," and that there was a "caution" on the dispatch return indicating that the occupant of the vehicle possibly was armed. Doc. 40-1 (Lt. Gill Aff.) at 2. Later, Lt. Gill determined that the tag from the car involved in the "carjacking" was not registered to the vehicle he had stopped. He ran the vehicle identification number and discovered that the car he had stopped had been stolen in a separate burglary reported by the Wichita Police Department on March 21, 2014.

Lt. Gill and several other officers searched the neighborhood to find the driver of the vehicle. During the search, officers stopped another vehicle in the neighborhood. The driver was McKenzie Carol Grange-Harding, and the passenger was Travis Beau Shain. Both individuals' addresses showed that they lived near plaintiff's house. When questioned, Mr. Shain admitted that they were driving in the neighborhood to pick up a friend named Kelly Tunnell who had "bailed" from a car after being stopped by the police. Officers then checked Mr. Shain's cell phone and found numerous calls between plaintiff's telephone number and Mr. Shain's number. Using Mr. Shain and his phone, the officers contacted plaintiff to find out where he was located. Eventually, they found him behind a trashcan in a backyard. After officers arrested plaintiff, they searched the car he was driving. They found a handgun, 29 grams

of methamphetamine, 2.7 grams of marijuana, a digital scale and rolling papers, a Sam's club membership card with plaintiff's picture but with someone else's name on the card.

### 2. Plaintiff's April 8, 2014 Arrest

Around 10 p.m. on April 8, 2014, Sedgwick County Sheriff's officers learned that there was "activity" at plaintiff's residence. Since federal, county, and city arrest warrants called for plaintiff's arrest, Lt. Gill decided to execute the warrants.

Lt. Gill's assignment during the arrest was to approach plaintiff's residence from the back through an alleyway. As he approached, he saw a camera mounted on a shed in the back yard. It was pointed directly at Lt. Gill. The camera had a light glow around it, making Lt. Gill believe that the camera had infrared capabilities. So, he believed the camera could capture anyone moving around the residence even at night.

When Lt. Gill moved into an open area in the back yard, he saw an individual standing at the back door of the residence and talking on a cell phone. The individual appeared to fit plaintiff's description. Lt. Gill shined his light on the individual, confirmed it was Kelly Tunnell, and arrested him. Officers found around $1,700 on plaintiff's person, along with a notebook which had names and numbers written in it. In Lt. Gill's experience as a law enforcement officer, this notebook had the look of a drug ledger.

During the arrest, Lt. Gill asked for plaintiff's consent to search his house. Plaintiff refused. Then, plaintiff asked Lt. Gill to close and lock the back door. Lt. Gill said that they would do that, but plaintiff insisted Lt. Gill do it right then. Lt. Gill agreed. When he opened the screen door to pull the back door closed, he smelled a strong odor of raw marijuana and possibly burnt marijuana as well. Lt. Gill concedes that he manipulated the locking mechanism as if to lock the door but actually left it unlocked when he pulled it closed.

10

After plaintiff was secured in a patrol vehicle, Lt. Gill decided to clear the residence to make sure that someone else was not hiding in the house. He planned to post officers at the house until they could secure a search warrant, and he says, he wanted to ensure their safety. It took seven officers about five minutes to clear the entire house. The house was one and one-half stories with a basement. The entire house was almost 2,000 square feet with six rooms on the upper two levels. Of the named defendants, Daniel R. Mlagan never entered the residence or participated in the protective sweep. And Robert L. Hephner did not enter the residence when officers arrested plaintiff. Mr. Hephner only participated in a search of the house the next day—April 9, 2014.

On the morning of April 9, 2014, Sedgwick County, Kansas District Court Judge Christopher Magana signed a search warrant authorizing a search of plaintiff's residence. And later that morning, Sedgwick County Sheriff's officers executed that warrant.

Sometime later, plaintiff pleaded guilty to one count of being a felon in possession of a firearm and one count of possession with intent to distribute methamphetamine. These charges resulted from his April 2, 2014 arrest.

**B.  Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When it applies this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if

under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citing *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To meet this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Id.* (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof." *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 670 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

**C.     Analysis**

Defendants argue that they are entitled to summary judgment against plaintiff's claim because the search they conducted immediately after plaintiff's arrest was a constitutionally permissible "protective sweep." Alternatively, they contend that any constitutional violation

under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citing *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To meet this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Id.* (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof." *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 670 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

**C.     Analysis**

Defendants argue that they are entitled to summary judgment against plaintiff's claim because the search they conducted immediately after plaintiff's arrest was a constitutionally permissible "protective sweep." Alternatively, they contend that any constitutional violation

resulting from the protective sweep was cured by the search warrant they secured the next morning. The court addresses these arguments separately, below.

### 1. Protective Sweep

As a starting point, the Fourth Amendment requires law enforcement officers to acquire a search warrant before searching a person or his house, papers, or effects. But there are several exceptions to this warrant requirement, and one of them is a protective sweep. *United States v. Hauk*, 412 F.3d 1179, 1185–86 (10th Cir. 2005) (citing *Maryland v. Buie*, 494 U.S. 325, 334 (1990)).

Generally, this exception allows law enforcement officers to protect themselves when making an arrest in a confined space. In this context, officers may "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched" without probable cause or reasonable suspicion. *Maryland v. Buie*, 494 U.S. 325, 334 (1990). If the law enforcement officers' search under this exception extends beyond immediately adjoining locations, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*

Here, Sedgwick County Sheriff's officers arrested plaintiff in his backyard. In that location, there were no immediately adjoining places from which an attack could be immediately launched. So, for summary judgment, defendants must show there is no genuine issue of material fact whether reasonable suspicion existed to believe that plaintiff's home "harbor[ed] an individual posing a danger to those on the arrest scene." *See id.* Defendants have failed to establish that, as a matter of law, they had reasonable suspicion to conduct a protective sweep.

Defendants contend that three facts provided the officers reasonable suspicion to perform the protective sweep. First, Lt. Gill had arrested plaintiff less than a week earlier with a handgun and drugs. Then, on April 8, 2014, Lt. Gill found a large amount of cash and a drug ledger on plaintiff's person. Finally, on April 2, 2014, plaintiff enlisted the help of confederates while trying to evade the police. These facts, defendants say, could lead an officer to form a reasonable belief that plaintiff was engaged in drug trafficking—an activity typically requiring more than one person—or that he had confederates willing to help him. But defendants fail to identify articulable facts establishing that plaintiff, when arrested, was conducting a drug transaction or that he had confederates willing to help him do so.

As the Tenth Circuit put it: "Of course, there could always be a dangerous person concealed within a structure. But that [possibility] in itself cannot justify a protective sweep, unless such sweeps are simply to be permitted as a matter of course, a result hardly indicated by the Supreme Court in *Buie*." *United States v. Carter*, 360 F.3d 1235, 1242–43 (10th Cir. 2004). The Circuit's reasoning in *Carter* and, later the same year, in *United States v. Roof*, 103 F. App'x 652 (10th Cir. 2004), explains why a reasonable jury could find that defendants lacked reasonable suspicion to conduct a protective sweep.

In *Carter*, the defendant in a criminal case challenged the officers' "protective sweep" of his backyard and his detached garage in the back of his lot after they had arrested defendant in his driveway. 360 F.3d at 1242–43. Before analyzing the facts, the Circuit noted: "Officers within the home of an arrestee may be particularly vulnerable to a dangerous confederate out of sight within the home. The risk is substantially diminished when the officers effect the arrest outside the home." *Id.* at 1242 (citing *Buie*, 494 U.S. at 333). Trying to justify their claim of reasonable suspicion, the government emphasized the fact that the defendant and his friend had

come out of the garage, running in a combative manner at the beginning of the encounter. *Id.* The Circuit was unconvinced. "[T]he officers had no reason to believe a third person had stayed behind, or that such a person would attack them while they were outside." *Id.* So it held that the search of the backyard and garage violated the Fourth Amendment.

In *Roof*, another criminal case, the defendant challenged the officers' "protective sweep" of his house after they had arrested him outside his back door. 103 F. App'x at 657–58. Before defendant's arrest, the officers had conducted surveillance and saw movement and shadows in the house. But once the defendant and his friend were arrested in the back yard, the officers didn't see any more movement in the house. The Court of Appeals reasoned that "the deputies' uncertainties as to whether anyone remained in the home did not justify the sweep." *Id.* at 658. In short, "[a] mere *absence* of information about whether anyone remains in a home does not justify a protective sweep." *Id.* (citations omitted) (emphasis in original).

The court understands that this is a civil case, while *Carter* and *Roof* were criminal cases involving constitutional issues. But the central question is the same—did the officers have a legal right to conduct a protective sweep inside a residence when the undisputed facts established that officers had made the arrest outside the structure. Like those criminal cases, defendants here have failed to articulate facts warranting a reasonably prudent officer to believe that the arrestee's nearby residence harbored someone posing a danger to officers on scene. On the summary judgment facts, defendants have not carried their burden on this legal theory.

Undaunted, defendants direct the court to two more Tenth Circuit opinions—*United States v. Cavely*, 318 F.3d 987, 996 (10th Cir. 2003), and *Fishbien v. City of Glenwood Springs, Colo.*, 469 F.3d 957 (10th Cir. 2006). They argue that these two cases suggest summary

15

judgment against plaintiff's § 1983 claim is appropriate here. But close examination of the two cases refutes defendants' reliance on them.

In *United States v. Cavely*, the Tenth Circuit concluded that "[t]he evidence showed specific facts that would warrant a reasonable officer to believe that appellant's home harbored an individual posing a danger to the officers or others on the arrest scene." 318 F.3d 987, 996 (10th Cir. 2003). The Circuit described the facts supporting the protective sweep in this fashion:

> Among other things, the officers had a clear indication of on-going methamphetamine production at the house. They knew appellant was in possession of a large amount of cash and methamphetamine. They knew that appellant's house had previously been used to manufacture methamphetamine and that appellant had just come out of the house carrying an explosive fuel sometimes used to manufacture methamphetamine. Moreover, appellant admitted he had "a friend" inside the house, but the friend did not appear or answer when officers knocked on the front door. The officers also knew that firearms had been found in the house during a prior search. They were just outside of the back door in an area where they could have been vulnerable to an attack from someone inside. There was no evidence that the officers entered the house merely for the purpose of gathering incriminating evidence.

*Id.* (internal citations omitted).

Likewise, in *Fishbien*, the Circuit held reasonable suspicion existed to justify a protective sweep of defendant's house. The court reasoned that "[o]fficers knew that the Fishbeins had at least one teenaged son [who wasn't present] and that firearms had recently been present inside the home." 469 F.3d at 962.

There is no other way to say it: these cases are just different than this case—or, at least, the summary judgment iteration of this case. On the summary judgment facts, a reasonable jury could find that the Wichita officers lacked a reasonable, articulable basis to believe that plaintiff's house harbored a person who presented potential dangers to officers. Neither *Cavely* nor *Fishbien* persuade the court that summary judgment is appropriate here.

16

In sum, defendants have failed to establish, as a matter of law, that they had reasonable suspicion to believe that plaintiff's home harbored an individual posing a danger to the officers on the arrest scene. The court thus declines to grant summary judgment on this basis.[3]

### 2. Compelling Need to Search Premises

Next, defendants contend that they had a compelling need to search the premises. This compelling need, they say, arose from Lt. Gill's plan to post officers at the house until they could secure a search warrant. To support this contention, defendants rely on Supreme Court precedent in *Segura v. United States*, 468 U.S. 796, 810 (1984). But defendants have failed to identify facts capable of supporting their theory.

In *Segura*, the Supreme Court has explained:

> [T]he heightened protection we accord privacy interests is simply not implicated where a seizure of premises, not a search, is at issue. The securing [of] a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents.

468 U.S. at 810 (internal quotation marks and citations omitted).

Here, plaintiff's § 1983 claim relies on officers' search of his house. It does not assert the officers violated plaintiff's constitutional rights by seizing it long enough to secure a search warrant. *Segura* does not apply. And even if plaintiff's claim placed defendants' seizure of the house at issue, defendants have identified no evidence in the summary judgment record capable of establishing that defendants had probable cause to believe evidence would be destroyed or removed. A reasonable jury could find that defendants did not have a compelling need to search plaintiff's residence before they secured a search warrant.

---

[3] Because of this conclusion and the conclusion in the previous subsection, the court does not address defendants' argument that the scope of the protective sweep did not exceed constitutional parameters.

### 3. Search Warrant Cured Constitutional Violations

Finally, defendants argue that any constitutional violation on April 8, 2014, was cured when Judge Magana signed a search warrant authorizing entry into and a search of plaintiff's residence. But defendants have failed to identify case authority holding that a subsequent search warrant nullifies a § 1983 claim based on a search conducted in an unconstitutional fashion. Certainly, the inevitable discovery doctrine allows a court to admit evidence when a search warrant is secured subsequently. *See United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005) (concluding that a court may apply the inevitable discovery doctrine "when it has a high level of confidence that the warrant in fact would have been issued and that the specific evidence in question would have been obtained by lawful means." (internal quotation marks and citation omitted)). While this doctrine permits a court to admit evidence during a criminal trial that may have been acquired unconstitutionally, it does not help defendants here. It does not nullify the possibility that officers may have encroached on plaintiff's constitutional rights. *See Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 558 (10th Cir. 1999) ("[A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial . . . ." (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 n.7 (1994))). And here, plaintiff does not argue that any evidence was discovered unconstitutionally. He simply argues that the search itself was conducted unconstitutionally.

The inevitable discovery doctrine does not entitle defendants to summary judgment against plaintiff's claim.

### 4. Robert L. Hephner and Daniel R. Mlagan

Finally, the uncontroverted facts establish that defendants Robert L. Hephner and Daniel R. Mlagan did not search plaintiff's house on April 8, 2014. Section 1983 only imposes liability against those persons who participate in a constitutional violation. *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). Plaintiff has neglected to establish Deputy Hephner or Deputy Mlagan personally participated in the search he claims was unconstitutional. To prevail on his claim against these two defendants, he must have adduced evidence capable of supporting such personal participation. The rules require him to demonstrate, when challenged at summary judgment, that he can carry this burden at trial. He has failed, so the court concludes that these two defendants are entitled to summary judgment against plaintiff's claim.

## IV. Conclusion

In sum, the court overrules plaintiff's Objection to Order of Magistrate Judge (Doc. 60) and denies his Motion to Stay Decision on Summary Judgment (Doc. 59). And the court grants defendants' Motion for Summary Judgment (Doc. 39) in part because defendants Robert L. Hephner and Daniel R. Mlagan did not search plaintiff's house on April 8, 2014. The court denies the remainder of defendants' motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Summary Judgment (Doc. 39) is granted in part and denied in part as described fully in this Order.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion to Stay Decision on Summary Judgment (Doc. 59) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff's Objection to Order of Magistrate Judge (Doc. 60) is overruled. And the court affirms Judge Sebelius's Order (Doc. 55).

**IT IS SO ORDERED.**

**Dated this 30th day of August, 2018, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
